IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RUBY BLACKMON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    No. 11-cv-02850-JPM-tmp |
| | ) |
| EATON CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

---

## REPORT AND RECOMMENDATION

---

Before the court is Defendant Eaton Corporation's ("Eaton") Motion for Summary Judgment, filed on October 1, 2012. (ECF No. 23.) With its motion, Eaton submitted a Statement of Undisputed Facts; the declaration of Kimberly Hood, Eaton's former Human Resources Manager; declarations of Eaton employees Lamont Poke and Stephanie Jones; and a transcript of the deposition testimony of Ruby Blackmon. Plaintiff Ruby Blackmon, *pro se*, filed a response to the motion on November 2, 2012. On November 7, 2012, Blackmon filed a set of responses to Eaton's statement of undisputed facts. On April 17, 2013, the district judge referred the motion to the undersigned magistrate judge for a report and recommendation. For the following reasons, it is recommended that Eaton's Motion for Summary Judgement be granted.

### I.   PROPOSED FINDINGS OF FACT

This case arises from allegations by Ruby Blackmon that she

was forced to work in a sexually hostile work environment while employed at Eaton, and then was fired in retaliation for reporting her supervisor for sexual harassment. The following facts are viewed in the light most favorable to the plaintiff, as the nonmoving party.

Prior to March 31, 2012, Eaton maintained a power equipment distribution center in Memphis, Tennessee.[1] (Def.'s Statement of Undisputed Facts ("SUF") ¶ 1; Hood Decl. ¶ 3, Oct. 1, 2012, ECF No. 23, Attach. 2.) At all times, Eaton's Memphis facility was an equal employment opportunity employer, with an anti-discrimination/harassment policy and a reporting procedure, which were set forth in Eaton's Harassment Free Workplace Policy. (Id. ¶ 3; Hood Decl. ¶ 3.) Eaton employees were trained with respect to this policy during orientation and throughout their careers with Eaton. The policy were also made available on Eaton's Employee Toolbox intranet system. (Id. ¶ 4; Hood Decl. ¶ 4.) Eaton's Harassment Free Workplace Policy stated that Eaton "will not tolerate any form of harassment in its workplaces." (Id. ¶ 6; Hood Decl. ¶ 4.) Among the potential forms of harassment was "[l]anguage or comments that are offensive" including "hostile, mocking or lewd comments or jokes or intimidation that alters an individual's work efficiency." (Id. ¶ 7; Hood Decl. ¶ 4, Ex. A.) If an employee violated Eaton's Harassment Free Workplace Policy,

---

[1]The Memphis facility closed on March 31, 2012.

it could result in the employee's termination. (Id. ¶ 5; Hood Decl. ¶ 4, Ex. A.) Blackmon was aware of Eaton's Harassment Free Workplace Policy, as evidenced by her signature on the policy. (Id. ¶ 9; Hood Decl. ¶ 6 and Blackmon Dep. 121:18-122:7.)

Blackmon was hired by Eaton on September 6, 1994, to work in the Memphis facility.[2] (Id. ¶ 10; Blackmon Dep. 50-52, June 22, 2012, ECF No. 23, Attach. 5.) In February 2003, Blackmon reported inappropriate conduct by a coworker named Mark Roberts to Mario Alcazar, the Memphis facility's manager at the time.[3] (Id. ¶ 13; Blackmon Dep. 94:8-96:22.) In response to Blackmon's report, Eaton conducted an investigation of Roberts. (Id. ¶ 14; Blackmon Dep. 96:23-24.) As a result of that investigation, Eaton terminated Roberts's employment. (Id.) After Roberts was terminated, Alcazar sent a letter to Blackmon thanking her for coming forward with her concerns regarding the inappropriate behavior. (Blackmon Dep. 99:12-20 and Ex. 14.)

On or about February 9, 2010, Kimberly Hood, who at the time

───────────────

[2]Page 52 of Blackmon's deposition is missing from the record, and she does not state on page 50 or 51 that this was the date on which she was hired. However, the date is stated in Eaton's Statement of Undisputed Facts, and Blackmon does not dispute her date of hire. Furthermore, that fact is not material to the issues before the court.

[3]Eaton's Statement of Undisputed Facts states that the report occurred in February 2002, but in Blackmon's deposition, she testified that the report occurred in February of 2003. The reference to 2002 in the undisputed facts appears to be a typographical error.

was Eaton's Human Resources Manager, was in her office when she heard two people arguing outside of her office door.[4] (Id. ¶ 20; Hood Decl. ¶ 8.) When she opened the door, she saw Blackmon arguing with Blackmon's supervisor, Daryl Tetlow. (Id.) Tetlow instructed Blackmon to go back to her work area; instead, Blackmon went into Hood's office and stated that she wanted to make a complaint about Tetlow. (Id. ¶¶ 21, 22; Hood Decl. ¶ 8.) Blackmon told Hood that Tetlow was treating her like a child and that she did not like it. (Id. ¶ 23; Hood Decl. ¶ 8.) Later that same day, Blackmon again complained to Hood that Tetlow was treating her like a child, and claimed that he was writing her up for errors that were not her fault. (Id. ¶ 24; Hood Decl. ¶ 9 and Blackmon Dep. 165). Blackmon also complained to Hood, during this second conversation, that Tetlow had been sexually harassing her by staring at her chest.[5] (Id. ¶ 25; Hood Decl. ¶¶ 9, 10.) Hood

_____

[4]Eaton's Statement of Undisputed Facts does not specify the exact date in February on which these events occurred. However, Blackmon states in her affidavit that she reported Tetlow's alleged harassment to Hood for the first time on February 9, 2010. Furthermore, Hood states that this incident in February was the first time that she had ever received a complaint about Tetlow. (Hood Decl. ¶ 9.) Thus, the court finds that the events described in Eaton's undisputed facts occurred on or about February 9.

[5]Although not clear from her affidavit and deposition testimony, it appears that Blackmon claims that she reported to Hood that Tetlow had also rubbed her back and breathed on her ear. (Blackmon Aff. ¶ 3, Nov. 1, 2012, ECF No. 25.) Hood, however, states that Blackmon only reported Tetlow's alleged staring, and nothing else. (Hood Decl. ¶ 10.) According to Blackmon's deposition testimony, Tetlow touched her back and breathed on her neck two to four times. (Blackmon's Dep. 168-170.) She testified at her deposition that

-4-

assured Blackmon that she would conduct an investigation and talk to Tetlow about this situation.  (Hood Decl. ¶ 10.)

Later that same day, Angela Scott, another employee at Eaton's Memphis facility, approached Hood and reported Tetlow for staring at Scott's chest as well.  (SUF ¶ 26; Hood Decl. ¶ 11.)  Hood agreed to investigate Scott's claims, but before she could investigate the complaint, Scott returned to her office and told Hood that she had lied about Tetlow and retracted her complaint in its entirety.  (Id. ¶¶ 28, 29; Hood Decl. ¶ 11.)  According to Hood, Scott said that Blackmon had asked her to lie about Tetlow.[6]  (Id.)

Hood spoke to Tetlow about Blackmon's claim that Tetlow was staring at her chest.  (Hood Decl. ¶ 12.)  Tetlow denied staring at Blackmon's chest, but did mention the fact that several employees reported that Blackmon was keeping her cell phone in her blouse to conceal it while she was talking on the phone.  (Id.)  Hood had

---

after she reported this behavior to Hood, Tetlow did not rub her back again.  (Id.)

[6]In Scott's affidavit, however, Scott disputes Hood's claim that Scott retracted her complaint, and states that she "never told Kimberly Hood that [Blackmon] told me to make a complaint against [Tetlow.]"  (Scott Aff. ¶ 5, Nov. 1, 2012, ECF No. 25.)  Blackmon also denies in her affidavit that she told Scott to accuse Tetlow of harassment.  (Blackmon Aff. ¶ 6.)  Scott now claims that she observed Tetlow stare at Blackmon's and other women's chest on several occasions, and that while she did make a verbal complaint against Tetlow, she never followed up on the complaint because she was fired before she had the chance to make a formal written complaint.  (Scott Aff. ¶¶ 3-5.)

already heard reports of Blackmon keeping her cell phone in her blouse, and had heard claims that Blackmon was violating company policy by talking on the phone while on the warehouse floor. (Id.) According to Hood, her investigation of Blackmon's allegations against Tetlow did not reveal that he was sexually harassing her, but rather that Blackmon got Scott to lie about Tetlow and that numerous employees believed that Blackmon was violating the cell phone policy. (Id.) Hood concluded from her investigation that Blackmon's complaint against Tetlow was an effort to deflect attention away from her own improper behavior by making a false accusation against Tetlow. (Id.) As a result, no disciplinary action was taken against Tetlow. (Id.)

On September 24, 2010, Eaton employees Stephanie Jones and Clifton Maclin were working on the "FedEx Line" while Blackmon was working at the other end of the warehouse. (SUF ¶ 30; Poke Decl. ¶ 5 and Jones Decl. ¶ 5.) At some point, Jones and Blackmon started arguing, and both were asked to come into an office to speak with Lamont Poke, Eaton's First Shift Logistics Supervisor, and Jennifer Florence, Eaton's Human Resources Development Program Participant. (Id. ¶¶ 31, 32; Poke ¶¶ 5, 6 and Blackmon Dep. ¶ 181-182.) During their discussion, Jones told Poke and Florence that Blackmon had "used the 'N' word" during the altercation. (Id. ¶ 33; Poke Decl. ¶ 6.) Blackmon denied using the "N" word during her altercation with Jones, but then repeated the word "after Stephanie

[Jones] said it" during the meeting with Poke and Florence. (<u>Id.</u> ¶ 34; Poke Decl. ¶ 6 and Blackmon Dep. 183.) After Blackmon used the "N" word during the meeting, Florence instructed Blackmon to stop using the racial slur. (<u>Id.</u> ¶ 35; Poke Decl. ¶ and Blackmon Dep. 185.) According to Blackmon's affidavit, she has "never used the 'N' word while at work for Eaton Corporation and never use [sic] this word at all." (Blackmon Aff. ¶ 7.)

The use of racial slurs, such as the "N" word, in the workplace directly violated Eaton's Harassment Free Workplace Policy.[7] (SUF ¶ 40.) After Hood reviewed the information gained through the investigation conducted by Poke and Florence, a recommendation was made to terminate Blackmon for violating the Harassment Free Workplace Policy. (<u>Id.</u> ¶ 36; Hood Decl. ¶ 15.) Hood reached out to Travis Gunter, Interim Site Manager; Fernando Esquivel, Vice President of Human Resources; Dana McConahy, Director of Logistics; and JJ Pfiffner, Division of Human Resources Manager to confer regarding the recommendation to terminate Blackmon. (<u>Id.</u> ¶ 37; Hood Decl. ¶ 15.) The recommendation was approved. (<u>Id.</u> ¶ 38; Hood Decl. ¶ 15.) On September 29, 2010, Blackmon was terminated. (<u>Id.</u> ¶ 39; Hood Decl. ¶ 16.)

---

[7] While Eaton does not cite anything in the record to support this statement of fact, the policy itself stated that harassment may include "[l]anguage or comments that are offensive, including vulgarities." (Hood Decl. Ex. A.) Blackmon does not dispute that the use of the "N" word in the workplace would have violated the policy.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.    Summary Judgment Standard Under Fed. R. Civ. P. 56

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009).   In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).  "The moving party bears the initial burden of production."  Palmer v. Cacioppo, 429 F. App'x 491, 495 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).   Once the moving party has met its burden, "the burden shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 200 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).   "[I]f the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law."  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).   "The central issue 'is whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Palmer</u>, 429 F. App'x at 495 (quoting <u>Anderson</u>, 477 U.S. at 251-52).

This court's Local Rule 56.1 sets out additional requirements that must be met by both the moving and nonmoving parties when filing briefs in support of and in opposition to summary judgment. The rule states in relevant part:

> (a) <u>Moving Party.</u> In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Fed. R. Civ. P. 56 shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by specific citation to the record. . . .
>
> (b) <u>Non-moving Party.</u> Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> > (1) agreeing that the fact is undisputed;
> >
> > (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> >
> > (3) demonstrating that the fact is disputed.
>
> *Each disputed fact must be supported by specific citation to the record*. . . . In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. *Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute*. . . .
>
> . . .

> (d) Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules *shall indicate that the asserted facts are not disputed for purposes of summary judgment.*

Local Rule 56.1 (emphasis added).

As a preliminary matter, the court notes that Blackmon has failed to adequately respond to Eaton's Statement of Undisputed Facts in accordance with Local Rule 56.1. Eaton filed with its motion for summary judgment a Statement of Undisputed Facts, each of which is supported by a specific citation to the record, as required by Local Rule 56.1(a). As stated by Local Rule 56.1, "[a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant" either agreeing that it is undisputed, agreeing that it is undisputed for purposes of summary judgment, or demonstrating that it is disputed. Local Rule 56.1(b). While Blackmon did submit a series of responses to each of Eaton's statements of fact, she did not comply with Local Rule 56.1(b)'s requirement that "[e]ach disputed fact must be supported by specific citation to the record." As Blackmon did not include any citations to the record in her responses, the court will disregard those responses. However, insofar as the sworn affidavits submitted by Blackmon in support of her response to the motion for summary judgment contradict facts stated in Eaton's statement of facts, the court considers those facts to be disputed for purposes of summary judgment.

## B. Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). There are two types of sexual harassment prohibited by this statute: (1) *quid pro quo* harassment and (2) sexual discrimination which creates a "hostile or abusive work environment." <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 65-66 (1986); <u>see also</u> <u>Souther v. Posen Const., Inc.</u>, No. 12-2256, 2013 WL 1729836, at *2 (6th Cir. Apr. 22, 2013); <u>Howington v. Quality Rest. Concepts, LLC</u>, 298 F. App'x 436, 440 (6th Cir. 2008). *Quid pro quo* harassment "occurs when an employee's submission to unwanted sexual advances becomes either a condition for the receipt of job benefits, or the means to avoid an adverse employment action." <u>Howington</u>, 298 F. App'x at 440 (citing <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 461 (6th Cir. 2000)). "To succeed [on a *quid pro quo* harassment claim], a plaintiff must prove . . . that he or she 'was subjected to unwelcome[] sexual harassment in the form of sexual advances or requests for sexual favors' and that submitting to these demands or advances was an express or implied condition for receiving job benefits, or that refusing to submit resulted in a tangible job detriment." <u>Souther</u>, 2013 WL 1729836 at *2 (quoting <u>Highlander v. K.F.C. Nat'l Mgmt. Co.</u>, 805 F.2d 644, 648

(6th Cir. 1986)). "Whether sexual harassment culminates in an adverse employment action determines whether a claim falls within the *quid pro quo* framework, or should be evaluated as a hostile environment claim." <u>Howington</u>, 298 F. App'x at 440 n. 4. Blackmon has not alleged *quid pro quo* sexual harassment.

"Title VII also 'affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult,' and, to enforce this right, prohibits conduct that creates a 'hostile work environment.'" <u>Id.</u> (quoting <u>Meritor</u>, 477 U.S. at 65.) To establish a *prima facie* case of a sexually hostile work environment claim under Title VII, a plaintiff must show that: "(1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment created a hostile work environment; and that (5) the employer is vicariously liable." <u>Clark v. United Parcel Serv., Inc.</u>, 400 F.3d 341, 347 (6th Cir. 2005) (citing <u>Williams v. Gen. Motors Corp.</u>, 187 F.3d 553, 560-61 (6th Cir. 1999); <u>see also</u> <u>Shields v. Fed. Exp. Customer Info. Servs. Inc.</u>, 499 F. App'x 473, 477-78 (6th Cir. 2012); <u>Simpson v. Vanderbilt Univ.</u>, 359 F. App'x 562, 571-72 (6th Cir 2009); <u>Howington</u>, 298 F. App'x at 443. A plaintiff must show that "her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'"

<u>Howington</u>, 298 F. App'x at 443 (quoting <u>Harris v. Forklift Sys.,</u> <u>Inc.</u>, 510 U.S. 17, 21 (1993)).

"In evaluating the severity and pervasiveness of workplace harassment, this court considers the totality of the circumstances." <u>Rayford v. Illinois Cent. R.R.</u>, 489 F. App'x 1, 4 (6th Cir. 2012). The plaintiff must meet both an objective and a subjective test – that is, "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." <u>Bowman</u>, 220 F.3d at 463 (citing <u>Harris</u>, 510 U.S. at 21-22); <u>see also</u> <u>Mann v. Navicor Grp., LLC</u>, 488 F. App'x 994, 999 (6th Cir. 2012); <u>Howington</u>, 298 F. App'x at 443; <u>Randolph v. Ohio Dept. Of Youth Servs.</u>, 453 F.3d 724, 733 (6th Cir 2006). In analyzing a hostile work environment claim, the court considers factors which include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116 (2002) (quoting <u>Harris</u>, 510 U.S. at 23) (internal quotation marks omitted); <u>see also</u> <u>Rayford</u>, 489 F. App'x at 4; <u>Howington</u>, 298 F. App'x at 444. Title VII, however, is not meant to be a "general civility code." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (citing <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S.

75, 80 (1998)). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to' a hostile work environment. Rather, 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" <u>Rayford</u>, 489 F. App'x at 5 (quoting <u>Faragher</u>, 524 U.S. at 788) (internal citations omitted). "Summary judgment is appropriate only if the evidence is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." <u>Hawkins v. Anheuser-Busch, Inc.</u>, 517 F.3d 321, 333 (6th Cir. 2008) (citing <u>Abeita v. Transam. Mailings, Inc.</u>, 159 F.3d 246, 250 (6th Cir. 1998)).

Eaton moves for summary judgment on Blackmon's hostile work environment claim, asserting that Blackmon cannot establish that she was subjected to "severe and pervasive" harassment sufficient to constitute a hostile or abusive environment. Eaton argues that (1) the alleged harassment was infrequent and very limited in duration; (2) the alleged conduct was not severe in nature; and (3) the alleged harassment did not unreasonably interfere with Blackmon's performance of her job. The court agrees, and therefore recommends that Eaton be granted summary judgment on Blackmon's hostile work environment claim.

In her affidavit, Blackmon claims that Eaton required her to work in a sexually hostile environment from around January 2010

until June 2010.[8]   She states generally that Tetlow constantly

stared at her chest, breathed on her neck, and rubbed her back, and

that these instances of sexual harassment were reported to Eaton's

human resources department but no action was taken against Tetlow.

However, beyond her general assertions of "constant harassment,"

Blackmon has only provided specific details regarding two instances

of harassing conduct by Tetlow.   She claims that on one occasion,

she was in a staff meeting and Tetlow stared at her chest "as if I

had no clothing on," and that everyone could see him staring at

her.   Separately, Blackmon states that there was one time when she

was in Tetlow's office while he was doing her review and he "was

watching me from my head to my toe."   Blackmon claims that this

made her uncomfortable and that she reported the incident to Hood.

In her deposition testimony, Blackmon stated that Tetlow also

touched her back and breathed on her neck two to four times.   She

has not, however, provided any specifics as to when any of these

incidents occurred.

     Considering the evidence in the light most favorable to the

plaintiff, the court finds that the conduct described by Blackmon

does not meet the objective "severe or pervasive" standard for a

_____

[8]Blackmon's complaint states that Eaton required her to work in a
sexually hostile environment from around January of 2010 until her
termination on September 29, 2010.   However, Blackmon has not
provided any support for her allegation that Tetlow engaged in any
harassing conduct after June 2010.

hostile work environment claim.[9]  While the described conduct would be considered distasteful and unprofessional, the conduct was not so extreme as to amount to a change in the terms and conditions of Blackmon's employment.  Aside from the constant staring, Blackmon alleges only two to four incidents of back rubbing or uncomfortably close breathing over the course of several months.  Aside from her statement that Tetlow's staring made her "uncomfortable," Blackmon does not contend that Tetlow's conduct made her feel physically threatened or humiliated.  She does not allege that Tetlow ever made any explicitly sexual or offensive comments or gestures toward her, and she admits that upon reporting the conduct to Hood, Tetlow stopped rubbing her back and breathing on her.  Blackmon has also made no allegations that Tetlow's actions interfered with her work performance, or even that his actions made it more difficult for her to do her job.  See Reed v. Cracker Barrel Old Country Store, Inc., 133 F. Supp. 2d 1055, 1066 (M.D. Tenn. 2000) (citing Williams, 187 F.3d at 567).

Courts have granted summary judgment for defendants in cases where the allegations of sexual harassment were much more obvious, direct, and egregious than those at issue in this case.  In Clark, one plaintiff claimed that the offending coworker "told vulgar

---

[9]The court assumes for purposes of summary judgment that there is at least a genuine issue as to whether Blackmon subjectively considered the harassment to create a hostile or abusive environment.

jokes, that twice he placed his vibrating pager on her thigh as he passed her in the hall, and most significantly, he pulled at her overalls after she told him she was wearing a thong." 400 F.3d at 351. The Sixth Circuit agreed with the district court's determination in Clark that the harassment of that victim "while distasteful and boorish, [] falls short of being sufficiently pervasive, hostile, or abusive to support a legal claim of a hostile work environment." Id.[10] In Stacy v. Shoney's Inc., the Sixth Circuit found that harassment did not amount to a hostile work environment where, over a two month period, a male supervisor made sexually suggestive comments to the female plaintiff, leered at her, called her at home when she was not working, and inappropriately touched her breast when he removed and replaced an ink pen from her front shirt pocket. No. 97-5393, 1998 WL 165139, at *1-3 (6th Cir. Mar. 31, 1998).

Recently, a district court held that certain conduct by a plaintiff's bosses, all of which made her "uncomfortable," gave her a "creepy feeling," and included several instances of staring at the plaintiff, was "insufficient to rise to the level of actionable harassment under established case law." Schmalz v. Northrop Grumman Corp., No. 3:11-cv-145, 2012 WL 1813095, at *9 (S.D. Ohio

[10]While Clark dealt with the Kentucky Civil Rights Act, the court stated that "[a] sexual harassment claim brought under the Kentucky Civil Rights Act [] is to be analyzed in the same manner as a claim brought under Title VII, its federal counterpart." 400 F.3d at 347.

May 17, 2012). In Schmalz, the plaintiff alleged that two of her bosses - Wright and Barefield – acted inappropriately towards her in several ways, including staring at her, touching her, and making sexually charged comments to her. The plaintiff claimed that Wright made her uncomfortable by making several inappropriate comments to her, leering at her in a sexually inappropriate manner, doing a "full body scan" of her, looking down her shirt, and getting too close to her while he was speaking. Id. at *8. With respect to Barefield, the plaintiff alleged that he made several forward comments toward her, placed his hand on her knee when they were driving to lunch, stared into her eyes, squeezed her hand, and brushed her hand with his on two or three occasions. Id. Based on the record, the court held that "[a]lthough the actions and comments allegedly made by both Mr. Wright and Mr. Barefield were clearly offensive and unprofessional," their conduct did not rise to the level of severity or pervasiveness required by the Sixth Circuit. Id. at *9.

Finally, the Sixth Circuit affirmed summary judgment for the defendant on a sexually hostile work environment claim where the plaintiff was subjected to both verbal and physical harassment by her supervisor. Hensman v. City of Riverview, 316 F. App'x 412, 416-17 (6th Cir. 2009). In Hensman, the plaintiff alleged that during the six week period that she and her male supervisor worked together, he "1) hugged her three times; 2) twice made comments

-18-

about her being 'voluptuous'; 3) said he was not listening to her because he was distracted by her beauty; 4) walked too closely behind her; 5) closed the door when he met with her in his office; 6) told her she looked cute in her pajamas [when he went to her home at night to borrow a spare office key]; 7) brought her flowers and bagels to apologize her for disturbing her the previous night; 8) complimented her perfume; 9) called her by the wrong name; and 10) grabbed her by the arm when she tried to leave." Id. at 416. In holding that Hensman failed to show that the harassment created a hostile work environment, the court determined that, while inappropriate, "[t]he most disturbing instances Hensman reported, the comments about Hensman's voluptuousness and the unwanted physical contact, were not frequent." Id. at 417. In reference to the non-physical harassment, the court found that "[a]lthough the other actions Hensman reported allegedly occurred more frequently, . . . this conduct simply does not permeate the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (internal quotation and citation omitted). The Sixth Circuit held that:

> [T]he unwanted physical contact from [Hensman's supervisor] was inappropriate, but it does not rise to the level of physically threatening or humiliating. [Her supervisor] never propositioned Hensman or grabbed her sexually. [Her supervisor's] conduct was offensive but simply not substantial enough to satisfy the prima facie

showing.

Id. (internal quotations and citations omitted).

In this case, based on a totality of the circumstances, the court finds that the conduct alleged by Blackmon is not, as a matter of law, so severe or pervasive such that a reasonable jury could conclude that Blackmon was subjected to a hostile or abusive work environment. The court recommends that Eaton's motion for summary judgment be granted on the hostile work environment claim.

## C.   Retaliation

Blackmon also claims that the termination of her employment was in retaliation for her reporting Tetlow for sexual harassment. Title VII prohibits an employer from discriminating against an employee for opposing "any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). A plaintiff may satisfy her burden to establish a retaliation claim through either direct evidence of retaliation, or circumstantial evidence that supports an inference of retaliation. Imwalle v. Reliance Med. Prods., 515 F.3d 531, 543-44 (6th Cir. 2008); Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2002). "Direct evidence is that evidence which, if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action and proves the existence

of a fact without any inferences or presumptions." <u>Abbott</u>, 348
F.3d at 542 (emphasis in original).  Once a plaintiff has produced
direct evidence of retaliation, she does not bear the burden of
disproving other possible non-retaliatory reasons for the adverse
action; the burden shifts to the employer to prove by a
preponderance of the evidence that it would have made the same
decision absent the impermissible motive.  <u>Weigel v. Baptist Hosp.
of E. Tenn.</u>, 302 F.3d 367, 382 (6th Cir. 2002).  "It is well
established that isolated and ambiguous comments are not sufficient
to make out a direct-evidence case of employment discrimination."
<u>Id.</u> (citing <u>Phelps v. Yale Sec., Inc.</u>, 986 F.2d 1020, 1025 (6th
Cir. 1993)).  Blackmon has not offered any direct evidence of
retaliation in this case.

To establish a *prima facie* case of retaliation, Blackmon must
demonstrate that: (1) she engaged in protected activity; (2) which
was known to the Eaton; (3) she suffered an adverse employment
action; and (4) there is a causal connection between the protected
activity and the adverse employment action.  <u>See Wasek v. Arrow
Energy Servs., Inc.</u>, 682 F.3d 463, 468-69 (6th Cir. 2012); <u>Little
v. BP Exploration & Oil Co.</u>, 265 F.3d 357, 363 (6th Cir. 2001).
"Under Title VII, there are two types of protected activity:
participation in a proceeding with the Equal Employment Opportunity
Commission ('EEOC') and opposition to an apparent Title VII
violation."  <u>Id.</u> at 469.  "An employee has engaged in opposing

activity when she complains about unlawful practices to a manager, the union, or other employees." Barrett v. Whirlpool Corp., 556 F.3d 502, 516 (6th Cir. 2009). To establish a causal connection between a protected activity and an adverse employment action by her employer, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in the protected activity. Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000); see also Newton v. Ohio Dept. Of Rehab. and Corr. - Toledo Corr. Inst., 496 F. App'x 558, 567 (6th Cir. 2012).

"We have explained that on a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the McDonnell Douglas inquiry." Risch v. Royal Oak Police Dep't, 581 F.3d 383, 390-91 (6th Cir. 2009) (internal quotation marks and citations omitted). Under this framework, "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a *prima facie* case of discrimination." Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007), abrogated on other grounds by Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). The burden of establishing a *prima facie* case of retaliation is not onerous. Melton v. U.S. Dept. of Labor, 373 F. App'x 572, 576 (6th Cir. 2010); Allen v. Mich. Dep't of Corr., 165 F.3d 405, 413 (6th Cir. 1999). Once a plaintiff establishes a

*prima face* case of retaliation based on circumstantial evidence, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action. <u>Id.</u> at 563. Should the defendant meet its burden of production, the burden shifts back to the plaintiff "to identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful [retaliation]." <u>Blair</u>, 505 F.3d at 524; <u>see also</u> <u>A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.</u>, 711 F.3d 687, 697 (6th Cir. 2013) ("the burden shifts back to the Plaintiffs to 'prove by a preponderance of the evidence that the legitimate reasons offered by [the defendant] were not its true reasons, but were a pretext for' retaliation") (quoting <u>DiCarlo v. Potter</u>, 358 F.3d 408, 415 (6th Cir. 2004)); <u>Risch</u>, 581 F.2d at 391 (same as <u>Blair</u>). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." <u>Dews v. A.B. Dick Co.</u>, 231 F.3d 1016, 1021 (6th Cir. 2000).

With respect to Blackmon's *prima facie* case of retaliation, Eaton does not contest that it was aware of Blackmon's report of sexual harassment, or that Blackmon suffered an adverse employment action in the form of her termination. However, Eaton does contest Blackmon's ability to establish the other two prongs of a *prima facie* case of retaliation. Specifically, Eaton argues that (1)

Blackmon's report does not qualify as "protected activity" because the conduct complained of does not rise to the level of actual sexual discrimination, and (2) Blackmon cannot show a causal connection between her report and her subsequent termination. Eaton further argues that even if Blackmon could establish a *prima facie* case of retaliation, Eaton has shown that Blackmon was fired for a legitimate, non-retaliatory reason, and Blackmon has produced no evidence to suggest that Eaton's proffered legitimate reason is a pretext for actual unlawful retaliation.

While the court disagrees with Eaton's contention that Blackmon's report of sexual harassment in the workplace does not constitute activity protected under Title VII, the court does find that Blackmon has failed to satisfy the causation prong of her *prima facie* case. Moreover, even if Blackmon could satisfy her *prima facie* case, Eaton has produced evidence of a non-retaliatory reason for her termination, and Blackmon has not offered sufficient evidence from which a reasonable jury could conclude that the reason is a pretext for retaliation.

1. *Prima Facie* Case of Retaliation - Protected Activity

Eaton seeks summary judgment on Blackmon's retaliation claim based on the argument that Blackmon's complaint to Hood that Tetlow was rubbing her back, breathing on her, and staring at her chest does not qualify as a protected activity, and "thus cannot be used to sustain [her] retaliation claim." In support of its contention,

Eaton relies on the Supreme Court's decision in <u>Clark Cnty. Sch. Dist. v. Breeden</u>, in which the Court found no protected activity where "[n]o reasonable person could have believed that the [incident complained of] violated Title VII's standard."[11] 532 U.S. 268, 271 (2001). In <u>Clark</u>, the "ordinary terms and conditions of [the plaintiff's] job required her to review [a] sexually explicit statement in the course of screening job applicants." <u>Id.</u> At a meeting to review the application which contained the statement, the plaintiff's supervisor commented that "he did not know what the statement meant," and the plaintiff's coworker – also at the meeting – responded that he would "tell [him] later." Both the supervisor and coworker then chuckled about it, and the plaintiff subsequently complained of the incident. <u>Id.</u> The Court found that the occurrence was "at worst an 'isolated incident' that cannot remotely be considered 'extremely serious'" as required by the case

---

[11]In <u>Clark</u>, the Supreme Court held that the district court was correct in granting summary judgment for the defendant on the plaintiff's claim of retaliation for reporting sexual harassment. 532 U.S. 268, 274 (2001). The Ninth Circuit had reversed the district court's decision, holding that the plaintiff's complaints constitute protected activities under Title VII's opposition clause "so long as she can show that she had a reasonable, good faith belief that [the conduct complained of] was prohibited by Title VII." <u>Breeden v. Clark Cnty. Sch. Dist.</u>, No. 99-15522, 2000 WL 991821, at *1 (9th Cir. July 19, 2000). In reversing the Ninth Circuit, the Supreme Court declined to rule on the Ninth Circuit's "reasonable belief" interpretation of Title VII's protection against retaliation. <u>Clark</u>, 532 U.S. at 270. Instead, the Court determined that the activity was not a "protected activity" because, even assuming the Ninth Circuit's approach was correct, "no one could reasonably believe that the incident [] violated Title VII." <u>Id.</u>

law.  Id.

Eaton suggests that Clark stands for the proposition that reported conduct must be "actionable under Title VII" in order for the report to constitute protected activity.  Eaton further states in more explicit terms that Blackmon "would need to prove she actually complained to Hood about some form of illegal discrimination actually prohibited by Title VII."  Eaton misconstrues Clark.  The Supreme Court, in reversing the Ninth Circuit, determined that no reasonable person could have believed that the isolated incident of harassment violated Title VII.  The court did not hold that the conduct complained of must actually violate Title VII.  Id.  Moreover, the Sixth Circuit has stated that "in order to obtain Title VII's retaliation protections, [a plaintiff] must have had a 'reasonable and good faith belief' that the harassing acts he was reporting were Title VII violation." Wasek, 682 F.3d at 469 (citing Johnson v. Univ. of Cincinnati, 215 F.3d 561, 580 (6th Cir. 2000)); see also Barrett, 556 F.3d 502 at 516 ("A plaintiff must demonstrate that her opposition was reasonable and based on a good-faith belief that the employer was acting in violation of Title VII.").  A plaintiff "does not need to oppose *actual* violations of Title VII in order to be protected from retaliation."  Id. (emphasis added).

In the instant case, Blackmon did not complain of simply a single joke by a coworker, but rather, persistent staring at her

chest and some physical contact, all of which she claims made her feel uncomfortable. While the facts do not constitute "severe and pervasive" harassment substantial enough to support a hostile work environment claim, the court finds that Blackmon has presented sufficient evidence at the summary judgment stage that she had a reasonable and good faith belief that Tetlow's alleged actions violated Title VII.[12]

2. *Prima Facie* Case of Retaliation - Causal Link

As to Blackmon's ability to establish the fourth prong of a causal connection between her harassment complaints and subsequent termination, Eaton argues that Blackmon has cited "nothing more

---

[12]The Sixth Circuit cases cited by Eaton in support of its argument that Blackmon's complaint was not "protected activity" are distinguishable. In Bell v. Safety Grooving & Grinding, the Sixth Circuit found that complaints fell short of Title VII "opposing" activities because the comments were "more critical of Safety's actions as a 'labor issue' rather than as a discriminatory practice," not - as Eaton seems to imply - because the actions themselves did not constitute discrimination. 107 F. App'x 607, 610 (6th Cir. 2004). Thus, the focus was on the nature and intentions of the complaints rather than the activity which was the subject of the complaints. Similarly, the other two cases cited by Eaton, Warren v. Ohio Dept. of Pub. Safety, 24 F. App'x 259, 264 (6th Cir. 2001) and Warmack v. Delta Airlines, Inc., No. 93-3902, 1994 WL 702630, at *3 (6th Cir. Dec. 15, 1994), involved situations where the conduct proclaimed as "protected activity" had nothing to do with complaints of Title VII violations. In Warren, the Sixth Circuit agreed with the district court that the plaintiff could not base a claim of retaliation on an internal investigation that involved no allegations of violations of Title VII rights. 24 F. App'x at 264. In Warmack, the court affirmed summary judgment for the defendant in a retaliation claim on the grounds that the phone call at issue was not protected conduct because it was neither related to a previously filed discrimination charge, nor intended to aid in the investigation of that prior claim. 1994 WL 702630 at *3.

than the fact that she was terminated seven (7) months after reporting alleged sexual harassment" to prove causation.[13]  Eaton contends that this evidence is insufficient to establish the necessary causal connection between the protected activity and Blackmon's termination.  In her response, Blackmon does not directly address this argument raised by Eaton.  Instead, she only makes general allegations in her affidavit that she was "constantly harassed, humiliated, retaliated against, and discriminated against" after reporting the harassing conduct.

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." Nguyen, 229 F.3d at 563; see also Newton, 496 F. App'x at 567.  In other words, the proffered evidence must "raise the inference that her protected activity was the likely reason for the adverse action."  Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 596 (6th Cir. 2007) (citing Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)).  "A causal link may be proved by either direct evidence or through temporal proximity that creates an inference of

---

[13]The time between Blackmon's first complaint to Hood on February 9, 2010 and her termination on September 29, 2010 is about seven and a half months.  While Blackmon claims that she continued to be harassed by Tetlow through June 2010 and refers to two other occasions on which she reported the conduct to Hood and was ignored, she does not provide any details as to the dates or circumstances of these subsequent reports.

causation." Newton, 496 F. App'x at 567 (citing Randolph, 453 F.3d at 737). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 525 (6th Cir. 2008).[14] "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Id. (citing Little, 265 F.3d at 365) ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.)).

The court finds that Blackmon has failed to present *any* evidence of a causal connection between her complaint of harassment and her termination. No reasonable jury could find a causal link between her report of harassment in February 2010 and her termination over seven months later. Although Blackmon (apparently) claims that she reported two other incidents of harassment to Hood and was ignored, and that the "same treatment" went on until June 2010, she has not specified when these reports

---

[14]In Mickey, temporal proximity was considered sufficient evidence of causation where termination occurred on the same day that the employer learned of protected conduct. 516 F.3d at 525.

were made. In any event, even if she had complained of sexual harassment through June 2010, she still was terminated nearly three months later. A reasonably jury could not find, based on this three-month period alone, a causal link between her reports of harassment and her termination. See Newton, 496 F. App'x at 567 (affirming summary judgment for the defendant on a retaliation claim where the only evidence to support causation was the temporal proximity of slightly over three months between the plaintiff's filing of her complaint of sexual harassment and her termination); Kean v. IT-Works, Inc., 466 F. App'x 468, 471 (6th Cir. 2012) (affirming summary judgment for the defendant based on the finding that the plaintiff could not satisfy the causation element of a retaliation claim because "[h]er only evidence of causation is that the discharge came roughly two-and-a-half months after the complaint" of a hostile work environment); Williams v. Zurz, 503 F. App'x 367, 373 (6th Cir. 2012) (affirming summary judgment for the defendant on a retaliation claim where the plaintiff had not identified any evidence "beyond the one-month temporal proximity that [the plaintiff's protected First Amendment activity] was a factor in Zurz's decision to fire" him); Arendale v. City of Memphis, 519 F.3d 587, 606-7 (6th Cir. 2008) (finding that a two month gap between the filing of an EEOC charge of discrimination and the retaliatory events was not enough on its own to support the causal connection element, and therefore granting summary judgment

to the defendant on the retaliation claim); Coburn v. Cargill, Inc., No. 09-2844-JPM-dkv 2012 WL 6607287, at *16 (W.D. Tenn. Dec. 18, 2012) (granting summary judgment to the defendant on a retaliation claim based on the finding that "[t]he five-month delay between the protected activity and alleged retaliatory action is insufficient to permit an inference of causation based solely on temporal proximity"); Ellis v. Shelby Cnty. Gov't, No. 10-2767, 2012 WL 4598549, at *6 (W.D. Tenn. Sept. 30, 2012) (granting summary judgment to the defendant based on the finding that "[t]he delay of nearly two months [between the plaintiff's EEOC complaint being filed and the alleged incidents of retaliation] is too long to allow an inference of causation without more proof"); cf. Hamilton v. Gen. Elec. Co., 556 F.3d 428, 435-46 (6th Cir. 2009) (finding that "[t]he *combination of* [] *increased scrutiny* [by the plaintiff's bosses] with the temporal proximity of his termination occurring less than three months after his EEOC filing" to be "sufficient to establish the causal nexus needed to establish a prima facie case of retaliation") (emphasis added).[15]

---

[15]The court notes that in one case, the Sixth Circuit has held that a time gap of around three months between protected activity and an adverse employment action could be sufficient evidence on its own of a causal link to satisfy the fourth prong of a *prima facie* case of retaliation. See Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 563 (6th Cir. 2004) (finding that the temporal proximity of just over three months between the plaintiff's filing of a discrimination charge with the EEOC and his termination was sufficient evidence of a causal connection). However, as one district court recently noted, "Singfield appears to be an outlier" within the case law regarding when, if ever, temporal proximity

3. <u>Eaton's Legitimate, Non-Retaliatory Reason and Pretext</u>

Even assuming, *arguendo*, that Blackmon could sufficiently establish a *prima facie* case of retaliation, the court finds that Blackmon's claim of retaliation fails due to Blackmon's complete lack of evidence to suggest that Eaton's proffered reason for her termination is actually a pretext for unlawful retaliation. Eaton has articulated a legitimate, non-retaliatory explanation for Blackmon's termination – namely, that Blackmon was fired for repeatedly using a racial slur in the workplace in direct violation of Eaton's Harassment Free Workplace Policy. That policy explicitly states that violations of the policy could serve as grounds for termination. Thus, the burden would shift back to Blackmon to present evidence that there is a genuine issue for the jury as to whether Eaton's proffered reason is pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant

---

alone allows the court to infer a causal connection. <u>Ervin v. Honeywell Tech. Solutions</u>, No. 3:10-cv-1234, 2013 WL 594747, at *10 (M.D. Tenn. Feb. 15, 2013). "At this point, our case law can fairly be characterized as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference." <u>Vereecke v. Huron Valley Sch. Dist.</u>, 609 F.3d 392, 401 (6th Cir. 2010). This court does not consider three months to qualify as "extremely close temporal proximity" such that a retaliatory motive could be inferred without any additional evidence.

the challenged conduct." <u>Dews</u>, 231 F.3d at 1021. Blackmon has presented no evidence from which a reasonable juror could infer pretext. Blackmon does not dispute that she engaged in an altercation with Jones. Blackmon does not dispute that Jones accused her of using the "N" word on the warehouse floor. Blackmon does not dispute that this incident resulted in a meeting involving her, Jones, Florence, and Poke. She also does not dispute saying the "N" word during that meeting with Florence and Poke. While Blackmon disputes that she ever used the "N" word outside of the meeting with Florence and Poke, she does not dispute that Jones claimed she used the word, Florence and Poke reported this to Hood, and that Hood determined that Blackmon violated company policy. <u>See</u> <u>Jordan v. Kohl's Dept. Stores, Inc.</u>, 490 F. App'x 738, 743 (6th Cir. 2012) ("Under the honest belief rule, 'as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.'") (quoting <u>Majewski v. Automatic Data Processing, Inc.</u>, 274 F.3d 1106, 1117 (6th Cir. 2001)). Based on the overwhelming evidence in support of Eaton's position that it fired Blackmon for violating Eaton's policies, the court finds that Blackmon has failed to provide sufficient evidence from which a reasonable jury could conclude that Eaton's proffered reason for Blackmon's termination was actually pretext for unlawful retaliation. Thus,

the court recommends that Eaton's motion for summary judgment on Blackmon's retaliation claim also be granted.

## III.  RECOMMENDATION

For the above reasons, it is recommended that Eaton's motion for summary judgment be granted.

Respectfully submitted,

s/ Tu M. Pham

_____
TU M. PHAM
UNITED STATES MAGISTRATE JUDGE

June 6, 2013

_____
DATE


**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, A PARTY MAY SERVE AND FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. A PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  FED. R. CIV. P. 72(B)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**