**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| RUBY BLACKMON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 2:11-cv-02850-JPM-tmp |
| ) | |
| EATON CORPORATION, ) | |
|     Defendant. ) | |
| ) | |

**ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR EXTENSION OF TIME;
DENYING PLAINTIFF'S MOTION FOR NEW TRIAL AND/OR JUDGMENT
NOTWITHSTANDING THE VERDICT;
AND
DENYING DEFENDANT'S MOTION FOR ATTORNEYS' FEES**

Before the Court is Plaintiff's Motion for New Trial and/or Judgment Notwithstanding the Verdict,[1] filed November 2, 2015. (ECF No. 148.) With leave of Court, Plaintiff submitted a memorandum of law and supporting exhibits on November 17, 2015. (ECF No. 155.) Defendant filed a response in opposition on December 15, 2015. (ECF No. 158.)

On January 11, 2016, Plaintiff filed a Second Motion for Extension of Time to file a reply brief in support of her Motion for New Trial on the basis that Plaintiff's counsel underwent unexpected medical treatment that impeded her ability to draft a reply brief. (ECF No. 161.) Defendant responded in opposition on January 12, 2016. (ECF No. 162.) Plaintiff's Second Motion

---

[1] In 1991, Rule 50 of the Federal Rules of Civil Procedure was amended to substitute the uniform term "judgment as a matter of law" in place of "judgment notwithstanding the verdict" and "directed verdict."

for Extension of Time is well-taken and therefore GRANTED.  The Court will consider Plaintiff's reply brief (ECF No. 163), filed January 19, 2016, in reviewing Plaintiff's Motion for New Trial.

Also before the Court is Defendant's Motion for Attorney's Fees, filed November 2, 2015.  (ECF No. 146.)  Plaintiff has not filed a response.

For the following reasons, Plaintiff's Motion for New Trial and Defendant's Motion for Attorney's fees are DENIED.

## I. BACKGROUND

This case arises from allegations that Defendant Eaton Corporation created a hostile work environment and retaliated against Plaintiff Ruby Blackmon in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (See Compl. ¶ 1, ECF No. 1.)  Plaintiff worked as an employee for Eaton Corporation from September 1994 until she was terminated on September 29, 2010.

There were two primary disputes in this case.  First, Plaintiff alleged that her supervisor, Darrel Tetlow, frequently stared at her breasts in a sexual manner between January and September 2010.  Plaintiff asserted that this conduct created a hostile work environment.  Defendant contended that Tetlow looked at Plaintiff's chest only to determine whether she was hiding a cell phone in violation of company policy.  Second, Plaintiff contended that she was fired for reporting the sexual

harassment by Tetlow. Defendant disputed this assertion, contending that Plaintiff was fired for repeatedly using a racial slur.

Plaintiff filed the instant action on September 28, 2011. (ECF No. 1.) On September 3, 2013, the Court granted summary judgment in favor of Defendant. (ECF No. 60.) Plaintiff appealed, and the Sixth Circuit reversed and remanded this matter. Blackmon v. Eaton Corp., 587 F. App'x 925 (6th Cir. 2014).

A jury trial was held in this matter beginning on September 29, 2015, and ending on October 5, 2015. (Min. Entries, ECF Nos. 129, 131, 134, 136, 138.) The jury returned a verdict in favor of Defendant on both claims, finding that Defendant did not create a sexually hostile work environment and that Defendant did not engage in unlawful retaliation in violation of Title VII. (ECF No. 139.)

Plaintiff now seeks a new trial on the grounds that (1) the Court erred in admitting and excluding several pieces of evidence,[2] (2) the verdict was against the weight of the evidence, (3) defense counsel suborned perjury and Kimberly Hood

---

[2] Plaintiff asserts this basis for a new trial under the heading "Whether a New Trial is Warranted Under Rule 59 When the Verdict is Against the Weight of the Evidence." (ECF No. 155-1 at 8-12.) Because her argument that evidence was improperly admitted or excluded is distinct from her argument that the verdict was against the weight of the evidence, the Court considers each argument separately.

3

perjured herself, and (4) several jurors fell asleep during the trial. (ECF No. 155-1.)

Defendant requests attorneys' fees under Federal Rule of Civil Procedure 54(d) and Local Rule 54.01(a) on the basis that the underlying claims were frivolous, unreasonable, and groundless. (ECF No. 146.)

**II. MOTION FOR NEW TRIAL AND/OR JUDGMENT AS A MATTER OF LAW**

**A. Legal Standard**

Under Rule 50(a) of the Federal Rules of Civil Procedure, a party may move for judgment as a matter of law before the case is submitted to the jury if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue." After the entry of judgment, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b).

Pursuant to Federal Rule of Civil Procedure 59(a), a new trial may be granted after a jury verdict where the jury has reached a "seriously erroneous result," as demonstrated by "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being . . . influenced by bias or prejudice." Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir. 1996); see also Fed. R. Civ. P. 59(a).

**B. Analysis**

Plaintiff argues for a new trial on the grounds that (1) the Court erred in admitting and excluding several pieces of evidence, (2) the verdict was against the weight of the evidence, (3) defense counsel suborned perjury and Kimberly Hood perjured herself, and (4) several jurors fell asleep during trial. (ECF No. 155-1.) Defendant asserts that "[e]ach of her claims is baseless." (ECF No. 158 at 1.) The Court agrees with Defendant.

**1. The Court Did Not Err in Admitting or Excluding Certain Pieces of Evidence**

Plaintiff argues that the verdict is against the weight of the evidence because the testimony of Kimberly Hood was false, the evidence regarding Plaintiff's relationship with Clifton Bridgeforth was highly prejudicial, and the exclusion of Charlie Peggins' rebuttal testimony was improper. (ECF No. 155-1 at 9-10.)

"If a trial court has improperly admitted [or excluded] evidence and a substantial right of a party has been affected, the trial court may order a new trial . . . ." Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir. 1989). The admission and "[e]xclusion of evidence is within the sound discretion of the trial court." Sutkiewicz v. Monroe Cnty. Sheriff, 110 F.3d 352, 357 (6th Cir. 1997); Humana, Inc. v. Shook, 798 F.2d 469,

1986 WL 17218, at *2 (6th Cir. 1986) (unpublished table decision).  Under Rule 401, evidence is relevant if it has the "tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Even if evidence is relevant, it may still be excluded pursuant to Rule 403 if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

As further discussed below, there is no evidence that Hood's testimony was false or otherwise should have been excluded.  Plaintiff now offers a document, allegedly written by Hood, to demonstrate that Hood's testimony was false.  (See ECF No. 155-8.)  Plaintiff has not established, however, that Hood authored the document in question.  See infra Part II.B.3.  Plaintiff asks the Court to make a logical inference that because this document was in Blackmon's personnel file, Hood would have at least seen the document and had knowledge that Blackmon made multiple reports of sexual harassment.  (ECF No. 163-1 at 5-6.)  Without any additional evidence as to how the file was maintained or Hood's familiarity with the file, the Court cannot make such a logical leap.  Plaintiff had ample opportunity to elicit testimony from Hood about this document and failed to do so.  See infra Part II.B.3.  Plaintiff's

6

assertions that Hood committed perjury because her testimony was contradicted by that of other witnesses merely poses a question of credibility (ECF No. 163-1 at 6-7), and does not evince that Hood committed perjury.  Accordingly, there is insufficient evidence to find that Hood's testimony was false or improperly admitted.

Additionally, the Court considered the potential relevance and prejudice of the evidence that Plaintiff had a relationship with Bridgeforth, and determined that its probative value was not substantially outweighed by a danger of undue prejudice.  <u>See</u> Fed. R. Evid. 403.  Although unfavorable to Plaintiff, the evidence of Plaintiff's relationship with Bridgeforth revealed potential biases and assisted the jury in evaluating certain witnesses' credibility.  It also provided a foundation for Bridgeforth's personal knowledge regarding Plaintiff's cell phone use at work and his lack of knowledge that Plaintiff was being sexually harassed.  Thus, the probative value of the evidence was not <u>substantially outweighed</u> by a danger of unfair prejudice, and the Court properly admitted this evidence over Plaintiff's Rule 403 objection.

The Court also properly excluded a portion of Peggins' testimony on rebuttal, finding that Peggins' ethics complaints against Defendant and his belief that Defendant pressured supervisors to fire certain associates were substantially more

prejudicial than probative on the questions of whether Defendant engaged in sexual harassment or retaliation against Plaintiff. (See ECF No. 158-1 at 14:10-15:12, 17:5-21, 24:21-24.) Moreover, the Court also found that Peggins' testimony was inappropriate rebuttal testimony. (See id. at 14:16-15:3.)

Because the Court properly admitted Hood's testimony and the evidence of Plaintiff's relationship with Bridgeforth and properly excluded Peggins' rebuttal testimony, the Court need not consider whether these rulings affected "a substantial right" of Plaintiff. Plaintiff is not entitled to a new trial based on the Court's admittance and exclusion of the challenged evidence.

### 2. The Verdict Was Not Against the Weight of the Evidence

Plaintiff further argues that "[t]he jury improperly made a credibility determination concerning what evidence to rely upon" and that the verdict was against the weight of the evidence. (ECF No. 155-1 at 11.)

The Court does "not sit as a thirteenth juror," Sitton v. Clements, 257 F. Supp. 63, 67 (E.D. Tenn. 1966), but it does "weigh the evidence when a party challenges the jury's verdict as [being] against the weight of the evidence." Ealy v. City of Dayton, 103 F.3d 129, 1996 WL 724368, at *3 (6th Cir. 1996) (unpublished table decision) (citing J.C. Wyckoff & Assocs. v.

8

Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991)). The Court must, "to some extent at least, substitute[] [its] judgment of the facts and the credibility of the witnesses for that of the jury." Miller v. Alldata Corp., 14 F. App'x 457, 464 (6th Cir. 2001) (quoting Duncan v. Duncan, 377 F.2d 49, 54 (6th Cir. 1967)). Moreover, the Court need not "take that view of the evidence [that is] most favorable to the verdict-winner." 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2806 (2d ed. 1995). Nevertheless, a jury verdict is not against the weight of the evidence simply because "different inferences and conclusions could have been drawn or because other results are more reasonable." United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir. 1993). The Court must accept the jury's verdict "if it is one which reasonably could have been reached." Denhof v. City of Grand Rapids, 494 F.3d 534, 543 (6th Cir. 2007) (quoting Duncan, 377 F.2d at 52).

The jury's verdict was not against the weight of the evidence. At trial, the jury heard testimony from Blackmon, Peggins, Angela Scott, Hubert Jefferson, Clifton Macklin, Clara Jones, Dr. Savira Sidhu, Bridgeforth, Stephanie Harris, Darrel Tetlow, Jennifer Maxwell, Kimberly Hood, Ruben Travis Gunter, Daniel Boyer, Lamont Poke, and Joyce Blackmon. (See Ex. & Witness List, ECF No. 141.) Each of these individuals had a different perspective on the events that occurred, and many of

9

them gave testimony that contradicted Plaintiff's version of events. While Plaintiff may not agree with the jury's ultimate conclusions, this case involved facts and theories on which reasonable minds could differ.

Although Plaintiff asserted that Tetlow frequently stared at her breasts in a sexual manner, there was an abundance of evidence to the contrary, demonstrating that Tetlow looked at Plaintiff's chest only to determine whether she was hiding a cell phone in her shirt. Moreover, even assuming the jury determined that Tetlow did stare at Plaintiff's breasts in a sexual manner, the jury could have reasonably determined that this conduct did not objectively rise to the level of severe and pervasive harassment.

At trial, Jefferson testified that he never saw Tetlow look at Plaintiff's breasts and that Plaintiff never spoke to him regarding Tetlow. Bridgeforth testified that Plaintiff always kept her cell phone in her shirt when she was on the warehouse floor and that Plaintiff never told him that she was being sexually harassed at work. Tetlow testified that he never looked at Blackmon in a sexual manner. Tetlow further testified that, during the September 29, 2010, meeting where Plaintiff was terminated, Plaintiff left to make a phone call, pulling her cell phone out from her shirt. Hood corroborated Tetlow's testimony that Plaintiff pulled her cell phone out of her shirt

at this meeting.  Maxwell, an employee in the Human Resources
Department at Eaton, testified that Plaintiff never reported
sexual harassment to her.  Hood also testified that Plaintiff
had reported sexual harassment to her, but that after
investigating Plaintiff's claims, Hood determined that there was
no sexual harassment.  Hood also explained that three employees
had reported that Plaintiff was keeping a cell phone in her
blouse and using it to talk to her sister.  Given this evidence,
it was reasonable for the jury to conclude that Eaton did not
create a hostile work environment.

It was also reasonable for the jury to conclude that Eaton
did not unlawfully terminate Plaintiff in retaliation for
reporting sexual harassment, but rather terminated Plaintiff for
using a racial slur.  Harris testified that Plaintiff used "the
n word" on the warehouse floor and that Harris reported this
behavior to Lamont Poke.  Tetlow also testified that he heard
Plaintiff use "the n word" repeatedly around colleagues.
Maxwell testified that, after Harris reported the incident,
Maxwell and Poke met with Plaintiff and Harris to investigate
the incident.  According to Maxwell, during this meeting,
Plaintiff used the racial slur approximately twenty times and,
at one point, called her co-worker the racial slur.  Maxwell
further testified that she asked Plaintiff five to seven times
to stop using the racial slur because it was offensive and Poke

11

was becoming visibly upset, but that Plaintiff did not relent. Hood testified that, after hearing about this incident, she recommended terminating Plaintiff based on Eaton's zero-tolerance policy regarding racial discrimination. Thus, a jury could have easily found that Plaintiff was lawfully terminated for using a racial slur.

Accordingly, the jury's findings that Plaintiff (1) was not subject to a hostile work environment and (2) was not the victim of unlawful retaliation were not against the weight of the evidence and will not be disturbed by the Court.

### 3. There is No Evidence that Hood Committed Perjury or that Defense Counsel Suborned Perjury

Plaintiff argues that a document provided to her by the EEOC from her personnel file demonstrates that Kimberly Hood perjured herself by testifying that Plaintiff only reported sexual harassment on one occasion and that Defense Counsel, with knowledge of this document, suborned Hood's perjury. (ECF No. 155-1 at 12-16.) In this handwritten document, dated May 12, 2010, the author notes that Blackmon "still feels he (Darrel) is looking at her breast." (ECF No. 155-8 ¶ 12.) It is not clear, however, that this document was written by Hood. There is no title to the document and no author listed. Additionally, if written by Hood, the document's reference to a meeting in "Kimberly's office" would be in the third-person. (Id. ¶ 6.)

Plaintiff had ample opportunity to impeach Hood or object to her testimony on the basis of perjury. Hood's testimony at trial was presented by video deposition. Plaintiff could have cross-examined Hood about the document at the time of the deposition; she could have filed a motion in limine to exclude this portion of the video deposition on the ground that it constituted perjury; she could have objected to the portion of the video deposition at the time it was played at trial; or she could have authenticated and attempted to admit the document at issue during trial. Plaintiff, however, did none of these things.

Instead, outside the presence of the jury, Plaintiff examined Peggins about the handwriting on the document at issue. Peggins testified that "[t]his kind of looks like Kimberly Hood's writing. I mean, I'm not a -- it just looks like something Kimberly Hood would write. I've seen the writing that she has done." (ECF No. 158-1 at 33:16-19.) This testimony is insufficient to show that Peggins had familiarity with Hood's handwriting or how Peggins acquired such familiarity, and accordingly, fails to authenticate the document. See United States v. Harris, 786 F.3d 443, 446 (6th Cir. 2015) ("A lay witness may authenticate or identify a piece of handwriting provided that his familiarity with the handwriting 'was not acquired for the current litigation.'" (quoting Fed. R. Evid.

901(b)(2)).)  Thus, Plaintiff failed to establish that Hood authored the document in question.

Because there is insufficient evidence to determine whether Hood authored or even had knowledge of the document, see supra Part II.B.1, the Court cannot determine whether Hood's statement that Plaintiff reported sexual harassment on one occasion was false or whether defense counsel knowingly suborned a false statement.  Plaintiff has not presented any evidence that corroborates her assertions of perjury.  See Sanders v. Allstate Ins. Co., 110 F.3d 64, 1997 WL 133344, at *2 (6th Cir. 1997) ("[I]t is well-settled that [a party] may not substantiate a perjury charge merely by pointing out apparent inconsistencies in testimony uncorroborated by factual evidence.").  Moreover, not every inconsistency constitutes perjury, and not every inconsistency that goes uncorrected constitutes the knowing use of false testimony.  See Patterson v. Brandon, No. 3:07-0029, 2010 WL 1417754, at *6 (M.D. Tenn. Mar. 31, 2010) ("'Discrepancy is not enough to prove perjury' because '[t]here are many reasons testimony may be inconsistent; perjury is only one possible reason.'" (quoting Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004)).)  Accordingly, Plaintiff is not entitled to a new trial on this ground.

### 4. Plaintiff Waived Any Objection to the Inattentiveness of the Jury

It is undisputed that Plaintiff did not make an objection to the Court regarding jurors allegedly sleeping during trial. "The failure to object to the alleged misconduct waives the argument on review." Blue v. Coca-Cola Enters., Inc., 43 F. App'x 813, 816 (6th Cir. 2002). Because Plaintiff failed to make this objection during trial, she waived her ability to raise this issue in a post-verdict motion.

Moreover, there is no evidence aside from Plaintiff's own assertions that any juror was sleeping during the course of the trial. The Court did not witness any jurors sleeping during trial; no courtroom personnel noticed jurors sleeping; no jurors raised the issue; and no attorneys, including Plaintiff's counsel, complained about jurors sleeping. See United States v. Fritz, 557 F. App'x 476, 480 (6th Cir. 2014); Jackson v. A-C Prod. Liab. Trust, 622 F. Supp. 2d 641, 649 (N.D. Ohio 2009) (holding that a new trial is appropriate only "[w]hen it is clear from the record, or the judge notices that a juror is asleep, and prejudice results"). In an affidavit attached to the Motion for New Trial, Plaintiff's counsel admitted that she could not confirm Plaintiff's assertion that jurors appeared asleep during the trial. (ECF No. 155-10.) Thus, not only is Plaintiff's objection waived, but it also lacks factual support.

### 5. There Was Sufficient Evidence for a Reasonable Jury to Find in Favor of Eaton

Although Plaintiff's motion is titled "Motion for New Trial and/or Judgment Notwithstanding the Verdict," she argues only for a new trial pursuant to Rule 59 in her memorandum in support of her motion. (See ECF Nos. 155, 155-1.) Her reply brief also refers only to her "Motion for a New Trial." (See ECF No. 163 at 1.) To the extent that Plaintiff seeks judgment as a matter of law pursuant to Rule 50, the Court finds that there was sufficient evidence for a reasonable jury to find for Eaton as to the hostile work environment and retaliation claims. See supra Part II.B.2.

For these reasons, Plaintiff's Motion for New Trial and/or Judgment Notwithstanding the Verdict is DENIED.

### III. MOTION FOR ATTORNEY'S FEES

#### A. Legal Standard

"Under the 'bedrock principle known as the "American Rule,"' '[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1175 (2013) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 253 (2010)). In Title VII cases, however, a prevailing defendant may recover reasonable attorneys' fees if the plaintiff's claim was "frivolous, unreasonable, or groundless, or . . . the

16

plaintiff continued to litigate after it clearly became so."
Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978).

**B.   Analysis**

The instant matter involved conflicting narratives of the events at issue and required the jury to make difficult credibility determinations.  Although the jury ultimately determined that Plaintiff failed to prove a prima facie case of hostile work environment or retaliation, Plaintiff's claims were not frivolous, unreasonable, or groundless.

This Court granted summary judgment in favor of Defendant in September 2013.  (ECF No. 60.)  Plaintiff appealed, and the Court of Appeals for the Sixth Circuit reversed and remanded. The Sixth Circuit determined that "genuine issues of fact precluded the district court from holding that Plaintiff could not show that the harassment she suffered was severe or pervasive." Blackmon v. Eaton Corp., 587 F. App'x 925, 931 (6th Cir. 2014).  Moreover, the Sixth Circuit held that "[t]he jury will have the opportunity to weigh the evidence and decide if retaliation was a but-for cause of Plaintiff's termination." Id. at 933.  Thus, Plaintiff had a feasible claim that Tetlow's constant staring at her chest rose to the level of severe and pervasive sexual harassment and created a hostile work environment as well as a feasible claim of retaliation.

At trial, several individuals testified to Eaton's concern that Plaintiff was carrying a cell phone in her shirt and using the phone throughout the workday in violation of company policy. The evidence presented showed that Tetlow looked at Plaintiff's chest to determine whether Plaintiff was, in fact, violating Eaton's cell phone policy. It was also evident that Plaintiff interpreted Tetlow's conduct as sexual harassment. The jury was faced with the genuine questions of whether Tetlow's conduct constituted sexual harassment and, if so, whether it was so objectively severe and pervasive to rise to the level of a hostile work environment.

Similarly, there was conflicting testimony as to the reason why Plaintiff was terminated. Plaintiff believed that she was terminated for reporting sexual harassment. Eaton contended that Plaintiff was fired for using a racial slur. The jury's determination of this question hinged on a factual dispute as to whether Plaintiff called another employee a racial slur or whether she merely uttered the slur in order to deny using it. The jury weighed the evidence and evaluated the witnesses' credibility to conclude that Defendant did not unlawfully terminate Plaintiff in retaliation for reporting sexual harassment.

Although Plaintiff was unsuccessful in pursuing her claims, her claims are not inherently frivolous or groundless as a

result.  Plaintiff presented a respectable case against Defendant and, following the close of evidence, the jury deliberated for several hours.  The Court finds that Plaintiff's claims were not frivolous, unreasonable, or groundless.  Accordingly, Defendant's Motion for Attorneys' Fees is DENIED.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for New Trial is DENIED and Defendant's Motion for Attorneys' Fees is DENIED.

**IT IS SO ORDERED,** this 4th day of February, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE
